[No. 16683.   Department One.   March 28, 1922.]

## W. S. BARNETT, *Respondent,* v. JOSEPH MAYER & BROTHERS *et al., Appellants.*[1]

CORPORATIONS (82)—STOCKHOLDERS' MEETINGS — WHAT CONSTITUTES. A conference between members of a family holding all the stock in a corporation, for the purpose of determining business policies, will not be held to be a stockholders' meeting, where it was not so intended and no corporate record was made of what transpired.

SAME (121)—AGENTS—REMOVAL. An employee of a corporation is not discharged by a vote of the stockholders, authorizing a certain officer to discharge him, where such officer refused to do so, for reasons apparently justifying such course; nor would he be discharged by notice from another officer not authorized by affirmative action of the corporation. so to do, no such affirmative action being possible .because the hostile factions held an equal interest and control in the company.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered January 7, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

[1]Reported in 205 Pac. 396.

*Frank A. Noble,* for appellants.

*Riddell & Brackett,* for respondent.

Tolman, J.—Respondent, as plaintiff, brought this action to recover an amount alleged to be due him as commissions earned upon an agreed basis while employed as a traveling salesman for the appellant Joseph Mayer & Brothers, a corporation. Appellant, Mayer Brothers, a corporation, was made a party defendant upon the theory that it was the successor in part to the business of Joseph Mayer & Brothers, and had, in writing, agreed to pay the valid and legal obligations of that corporation as they existed on January 1, 1920. The case was tried to the court without a jury, and from a judgment in favor of respondent and against both corporations in the sum of $894.34, with interest and costs, both appellants appeal.

There is but little dispute as to the amount of the recovery, it being the main contention that respondent had been duly discharged by the old corporation prior to the rendering of the services mentioned, and that therefore he is entitled to recover nothing.

It appears that respondent had been for many years in the employ of Joseph Mayer & Brothers, and in 1917 he was, by agreement, put upon a commission basis and authorized to continue to represent his house in the territory he had previously covered, which was California and adjacent states. Joseph Mayer & Brothers was what may be called a family corporation, all of its capital stock being held and owned by three brothers, Joseph, Albert and Markus Mayer. Its business had been managed and controlled for many years by two trustees, Joseph Mayer and Albert Mayer, the former being president, and the latter the secretary-treasurer of the corporation. For some years prior to the time in question, these two brothers had serious-

ly disagreed regarding the conduct of the business, and there was great lack of harmony between them. The capital stock being divided equally between the two factions, neither could oust the other, and they each continued in office at cross-purposes with the other. Respondent had originally been employed by Joseph Mayer; had always worked solely under his direction, and the commission contract under which he was working had been made with Joseph Mayer, representing the corporation.

In January, 1919, a conference was held upon a Sunday morning at the office of the corporation. All of its stockholders were present, as was also Siegfried Mayer, a son of Joseph Mayer, who was not a stockholder. The meeting appears to have been in the nature of a family conference with reference to the affairs of the corporation, and not a meeting of the stockholders or trustees as such, and no record was made or entered in the books of the corporation as to what was there agreed upon. According to the testimony, at this meeting it was informally agreed between all present that a place should be provided for Siegfried Mayer by giving him the position and territory then occupied by respondent, and additional territory in Alaska which had previously been covered by Markus Mayer, and that Joseph Mayer would at once notify respondent that his employment would cease on July 1, 1919. No such notice of dismissal was ever given, Joseph Mayer claiming that, by reason of the later discovery by him that Albert Mayer, who was in charge of the sales department, was withholding orders from the factory department, which was in his own charge, to the detriment of the corporation and its business, and for his own personal advantage, he was justified in withdrawing his consent to the discharge of respondent and in

declining to carry out the arrangement theretofore agreed upon. Respondent had no notice or knowledge whatever of this meeting or of any intention that he should be discharged until some time in October, when he was so informed by Albert Mayer, as we shall later mention.

Acting upon his belief that the sales department was withholding orders from the factory department, Joseph Mayer, by telegram to respondent in August, 1919, directed him to send all orders to Joseph Mayer personally, so that there should be no opportunity for the sales department to interfere, and later in the same month, by letter, directed respondent to come to the home office to assist in the management of the factory department temporarily, as he, Joseph Mayer, contemplated undergoing an operation which would necessitate his absence from the business for a time. Respondent complied with this request and it was arranged between Joseph Mayer and himself that he should remain at the factory until January 1, 1920, at a salary of $75 per week, and that Siegfried Mayer should cover his territory during that time. Just how soon after respondent took up his duties at the factory Albert Mayer learned of the fact, does not clearly appear; but on October 4 he notified Joseph Mayer that he would issue and sign no more salary checks for respondent, and Joseph Mayer immediately replied in effect that respondent would remain on the pay roll until he, Joseph Mayer, saw fit to discharge him. Thereafter, about October 11, Albert Mayer attempted to orally discharge respondent, and on October 16, by letter, sent to respondent checks said to be in full for services to date, in which letter this language appears:

"This is to notify you that your services were terminated under date of October 11, and this company will

not be responsible for any further services which you may attempt to render.''

Respondent informed Joseph Mayer of the attitude which Albert Mayer had assumed towards him, and was told that there was no agreement for his discharge, to pay no attention to what Albert Mayer had or might say or do, and to proceed with his duties as theretofore. Accordingly, respondent continued in his employment until November 1, and then, with the consent and under the direction of Joseph Mayer, he returned to his former duties in California, and thereafter and before January 1, 1920, obtained and sent to Joseph Mayer, in accordance with the telegraphic instructions given him in August, the orders upon which the present claim for commissions is based.

About February 4, 1920, an agreement was reached between the members of the Mayer family by which a division was made of the business of Joseph Mayer & Brothers, the factory department going to Joseph Mayer and being incorporated in the name of Joseph Mayer, Incorporated, and the sales department going to the other brothers and being incorporated in the name of Mayer Brothers. The latter corporation duly assumed and agreed to pay all of the valid and legal indebtedness of Joseph Mayer & Brothers as it existed on January 1, 1920, and hence it is liable for respondent's claim, if anything was legally owing by the original corporation to respondent on the date specified.

Appellant strenuously attacks the facts as found by the trial court, of which the foregoing is a reasonably fair resume, contending that respondent's return to California and subsequent solicitation of orders was not in good faith because he then knew he had been discharged by the action of the trustees of Joseph Mayer & Brothers, in January, 1919; that such action

was the act of the corporation, duly adopted at a corporation meeting; that Joseph Mayer was not justified in failing to give respondent notice thereof and discharging him accordingly; and that, because of such failure, Albert Mayer had a right to and did discharge respondent in October before the rendition of those services. So far as these matters are questions of fact, we are, after a study of the record, abundantly satisfied with the findings of the trial court, which are sustained by a fair preponderance of the evidence.

Appellant contends that the meeting in January at which the discharge of respondent was agreed upon must, even under the facts found, as a matter of law, be held to be a corporate meeting. To this we cannot assent. If it was intended to be a corporate meeting by those who participated, all interested being in fact present, then it might be such, notwithstanding lack of notice, informality and failure to make a written record; but if those who participated did not so intend, then it would be no more than a conference of individuals not binding upon the corporation. Albert Mayer, clearly and without qualification on cross-examination, testified that the meeting was not a stockholders' meeting, but only an informal family conference for the purpose of determining business policies. From this testimony and all the surrounding circumstances, the trial court rightly determined that the meeting was a family conference only.

But if the contrary were true, we could not say that the evidence preponderates against the findings of the trial court that Joseph Mayer had a right (presumably because of the subsequent acts of Albert Mayer) to refuse to discharge respondent or permit others to do so, and to continue respondent in the employ of the corporation. In any event, the January agreement, as testified to, did not purport to discharge respondent

at that or at any future time, but was only to the effect that Joseph Mayer should discharge him, and Albert Mayer was given no authority in the premises. Joseph Mayer having done nothing, some further affirmative act on the part of the corporation was necessary to effectuate respondent's discharge. No such affirmative action is shown to have been taken, nor could it be so long as the hostile factions each held an equal interest and had equal control and neither would give way to the will of the other.

Finding no error, the judgment appealed from is affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and MACKINTOSH, JJ., concur.